## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUDY K. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-06-741-R |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Judy K. Jones ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for widow's insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

## Administrative Proceedings

Plaintiff initiated these proceedings in February, 2003 by filing a claim for widow's insurance benefits, alleging that she became disabled in January, 1986 from three back surgeries and asthma with resulting limitations in lifting, walking, breathing, sitting and standing [Tr. 45 - 47 and 62]. Plaintiff's claim was denied, and she subsequently sought and received a de novo hearing – where she was represented by counsel – before an

---

[1] Effective February 1, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as Defendant in this action.

administrative law judge ("ALJ") [Tr. 23 - 25, 28 - 29, 30, and 334 - 361].  In her March, 2005 hearing decision, the ALJ found that while Plaintiff suffered from various severe impairments, she retained the ability to perform work in the national economy and, consequently, was not disabled within the meaning of the Social Security Act [Tr. 13 - 19].  The Appeals Council of the Social Security Administration denied Plaintiff's request for review [Tr. 5 - 7], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

## Standard of Review

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* at 299.

## Determination of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail).  Plaintiff bears the initial burden of proving that she has one or more severe impairments.  20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.  *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

**The ALJ's Decision and Plaintiff's Claims of Error**

As summarized by the ALJ,  Plaintiff – fifty-three years old with a ninth grade education and with work experience as a sandwich maker [Tr. 14] – gave the following account of her impairments and functional restrictions:

> The claimant testified that she is disabled by bronchitis, asthma, and back problems.  The claimant described a history of three back surgeries.  The claimant also indicated that she is disabled due to a psychiatric condition with mood swings occurring three to four times a week.  The claimant testified that her psychiatric condition has resulted in her throwing things at her daughter as well as suicidal thoughts.  The claimant testified that she does not use antidepressant medication.
>
> In describing her functional restrictions, the claimant estimated she is limited to walking one block and lifting approximately eight pounds with additional significant limitations on bending and twisting.  The claimant described difficulty with interpersonal relationships and indicated that

interacting with others results in heavy perspiration and a rapid heartbeat. The claimant testified that she limits her daily activities to spending time around her family.

[Tr. 15].

Plaintiff claimed that she had been disabled as a result of her physical impairments since 1986 [Tr. 14]; the ALJ determined as a procedural matter, however, that "[t]he claimant must establish disability during the prescribed period that began on July 1, 2002 and ends on January 9, 2010," *id.*, a finding not challenged here. In this connection and with regard to the medical evidence of record, the ALJ noted that a large portion of such evidence predated the period in question:

> The undersigned notes that Exhibits 1F, 2F, 3F, and 5F address the period prior to control date and are of limited probative value in assessing the claimant's residual functional capacity. The claimant's medical history is positive for bronchitis and asthma. In addition, the claimant's medical history is positive for back surgery in 1978, 1986, and 2000 (Exhibit 7F). Most recently, the claimant has diagnosed with disc herniation at L4-L5, treated with lumbar discectomy. The claimant was noted to have made an excellent recovery from back surgery (Exhibits 1F, 2F, 3F, and 5F).

[Tr. 16].

The ALJ then reviewed the evidence that had been generated during the applicable time period – including the opinion of a State Agency Psychologist set out in a Psychiatric Review Technique and the opinion of a State Agency medical doctor that Plaintiff could perform light work with only occasional stooping [Tr. 15 - 16] – and focused on the reports of the physician and the clinical psychologist who performed consultative examinations of Plaintiff [Tr. 16 - 17]. It is various findings made by these two consultative examiners that are at the center of the error claimed in this appeal, with Plaintiff first alleging that the ALJ ignored certain "probative medical evidence . . .

4

without providing any explanation for his[2] rejection of this evidence." [Doc. No. 15, p. 8].  In connection with this first claim of error, Plaintiff further maintains that the evidence allegedly ignored by the ALJ contradicted her residual functional capacity[3] assessment "since the RFC did not adequately address [Plaintiff's] ambulation difficulties and contained no restrictions related to her left upper extremity impairments as discussed in the next argument." *Id.* at 9.  That next or second claim of error is that the RFC assessment "was not based on substantial evidence because it was overwhelmingly contradicted by the substantial evidence of record." *Id.* at 10.  Because Plaintiff's claims relating to the findings of the consultive examiners are specific, as are her claims regarding the ALJ's treatment of such findings, the consultative reports will not be described in this overview but will instead be detailed in the legal analysis to follow.

Following her review of the medical evidence, the ALJ concluded that Plaintiff's allegations regarding her limitations were not totally credible [Tr. 17].[4]  She assessed Plaintiff with the capacity for light work restricted by (1) the inability to crawl, (2) the inability to bend, stoop or crouch more than occasionally, (3) the inability to have more than minimal and superficial interaction with the public and, (4) the inability to engage in team work. *Id.*  Based upon this RFC, the ALJ determined that Plaintiff was precluded from returning to her past relevant work as a sandwich maker and, relying on the

---

[2]It is noted for clarification purposes that masculine pronouns are mistakenly used throughout both the Plaintiff's and the Commissioner's briefing in reference to ALJ Jodi B. Levine.

[3]Residual functional capacity ("RFC") "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 404.1545 (a) (1).

[4]Plaintiff's briefing makes no reference to the legal or evidentiary sufficiency of the ALJ's credibility determination.

testimony of the vocational expert, concluded that Plaintiff could engage in light, unskilled work as a small products assembler and, consequently, was not disabled within the meaning of the Social Security Act.  *Id.* at 17 - 18.

**The ALJ's Discussion of the Medical Evidence and the RFC Assessment**

> **Walking and Standing Limitations**

It is Plaintiff's contention that the ALJ committed legal error by ignoring vital probative evidence in Plaintiff's medical record which contradicted the ALJ's findings. Plaintiff acknowledges that the ALJ was not required to discuss each item of evidence in the record but argues that she erred by failing to "discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996).  She likewise contends that "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004).

In this connection, Plaintiff maintains that

> The ALJ mentioned Dr. Anthony's statement that [Plaintiff] had "a safe and stable gait at an appropriate speed and without the use of an assistive device."  On the other hand, the ALJ completely ignored Dr. Anthony's observation that [Plaintiff] "moves about the room with some difficulty complaining of the back and left hip pain."

[Doc. No. 15, p. 8, record references omitted].   Plaintiff characterizes this latter observation by Dr. Anthony as a "statement indicating [Plaintiff] had difficulty with ambulation," *id.,* and argues that this evidence – evidence allegedly ignored by the ALJ

– "contradicted [the ALJ's] residual functional capacity (RFC) since the RFC did not adequately address [Plaintiff's] ambulation difficulties." *Id.* at 9.

Contrary to Plaintiff's characterization of his finding, what Dr. Anthony actually stated was that Plaintiff "*ambulates* with a stable and safe gait at an appropriate speed without the use of assistive devices." [Tr. 283, emphasis added].  Thus, it was the physician who specifically tied "ambulation" to Plaintiff's gait and found no limitations. As to Dr. Anthony's  observation that Plaintiff moved with some difficulty about the examination room, complaining about back and left hip pain, the ALJ noted Dr. Anthony's finding that Plaintiff had a decreased range of motion in her back and a painful, though not significantly decreased, range of motion in her hip, thus acknowledging rather than ignoring the physician's observation  that movement caused Plaintiff to suffer pain [Tr. 16, 283 and 286].  The ALJ's decision reflects that she fully – not selectively –  considered Dr. Anthony's report regarding any ambulation and motion limitations.

Plaintiff also complains that the ALJ's RFC assessment "did not adequately address [Plaintiff's] ambulation difficulties." [Doc. No. 15, p. 9].  She argues that "the ALJ's finding that [Plaintiff] could perform the walking and standing requirements of the RFC for light work was overwhelmingly contradicted by the substantial evidence of the record as a whole," and maintains, once again, that "Dr. Anthony's statement that [Plaintiff] had difficulty moving about the room overwhelmingly contradicted the ALJ's RFC for light work since this RFC would require an extensive amount of walking and standing." *Id.* at 10.  She then argues that Dr. Fiegel – whose RFC assessment for light work was relied

upon by the ALJ [Tr. 15 - 16 and 291 - 298] – "also inaccurately noted [Plaintiff] had a 'Good gait' and ignored Dr. Anthony's discussion regarding [Plaintiff's] difficulties with moving about the room." [Doc. No, 15, p. 10].  In addition, without reference to *any* supporting medical authority, Plaintiff also disputes Dr. Fiegel's other findings and concludes, "Therefore, since Dr. Fiegel's assessment was based on an inaccurate and incomplete discussion of the evidence or relied on evidence which actually appeared to contradict the ALJ's light RFC, this assessment did not constitute substantial evidence which could properly support the ALJ's RFC finding."  *Id.* at 10 - 11.

As previously discussed, Dr. Anthony *did not* find limitations with regard to ambulation, and Plaintiff's argument about any inaccuracy/incompleteness in Dr. Fiegel's findings is nothing but unsupported speculation.   Plaintiff's remaining assertion with regard to the evidentiary sufficiency of the RFC is equally unpersuasive. She argues that "the substantial evidence of the record demonstrated [Plaintiff's] lumbar spine impairments *nearly* met all the criteria of Listing 1.04A."  *Id.* at 12 (emphasis added). Consequently, Plaintiff contends that "this substantial medical evidence of severe, *nearly* listing level spinal impairments also overwhelmingly contradicted the ALJ's finding that [Plaintiff] could perform the lifting, standing, and walking requirements of light work." *Id.*(emphasis added).   No legal authority is cited in support of Plaintiff's theory, and the undersigned is unaware of any such authoity.

Plaintiff has pointed to no medical opinion contradicting the functional findings of Dr. Fiegel or otherwise establishing that she suffered from a disabling restriction with regard to walking and standing.   The ALJ's assessment that Plaintiff is capable of

8

performing the walking and standing requirements of light work is supported by substantial evidence and is not overwhelmed by other evidence of record.

### Lifting Limitations

Next, Plaintiff contends that "the ALJ also ignored all of Dr. Anthony's findings related to [Plaintiff's] left upper extremity impairments" and that "the ALJ's RFC was not based on substantial evidence because it was overwhelmed by substantial evidence in the record indicating [Plaintiff] had severe left upper extremity impairments which the RFC did not properly address." [Doc. No. 15, pp. 8 and 13]. The Commissioner counters that "Plaintiff did not allege that she was limited due to any arm impairments in either her application materials or at her hearing [and that] [w]hen a claimant does not allege any physical limitations in a specific functional capacity, then the ALJ is not required to include any such limitations in the residual functional capacity finding." [Doc. No. 18, pp. 7 - 8]. As support for his argument, the Commissioner relies upon a ruling from the Social Security Administration:

> When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

Social Security Ruling 96-8p, 1996 WL 374184, at *1.

Plaintiff's argument actually encompasses two alleged restrictions: first, a limitation in the ability to reach and, second, a limitation in the ability to grip and handle. As to whether Plaintiff ever alleged a reaching limitation, both Plaintiff and the

Commissioner direct the court to the transcript of the administrative hearing where the ALJ questioned Plaintiff about her limitations:

> ALJ:     All right.  What about if I put [hypothetical wads of money] over your head and put them up so you just to reach up to get them?
>
> CLMT:    It means I'll have to stretch - -
>
> ALJ:     Okay. So - -
>
> CLMT:    - - because - -
>
> ALJ:     - - where your back problem is it's just the twisting and bending part then?
>
> CLMT:    Yeah, because he put the cadaver bone in there and it - -
>
> ALJ:     Okay.
>
> CLMT:    - - you know, you don't have as much movement or whatever you call it.

[Tr. 343].  Referring to this testimony, the Commissioner argues that "at the hearing, Plaintiff . . . apparently stated that she did not have any limitations in reaching," [Doc. No. 18, p. 8].  Plaintiff, on the other hand, asserts that, "Unfortunately, the ALJ interrupted [Plaintiff] while she was trying to answer the question regarding reaching and this interruption left her answer somewhat unclear." [Doc. No. 19, p. 3].  Plaintiff continues by urging that "it appears more likely then not that [Plaintiff] was attempting to indicate that she had difficulties with the stretching required by reaching over her head when the ALJ interrupted her." *Id.*

In a record otherwise wholly silent about any claimed reaching restrictions, the undersigned is unable to construe the foregoing testimony as a claim by Plaintiff that she

had a reaching limitation.  Moreover, counsel's suggestion that the ALJ interrupted Plaintiff is speculative; it is equally likely that Plaintiff was simply not completing her thoughts and the ALJ simply following through with her questioning.  At any rate, Plaintiff was represented at the hearing by counsel who had the opportunity to elicit any further testimony about her claimed restrictions and to correct any potential misconceptions.  *See Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present claimant's case in a way that claimant's claims are adequately explored.").  Plaintiff has not pointed the court to *any* medical opinion of record that she was restricted in reaching. Accordingly, the ALJ did not err by failing to include a limitation in Plaintiff's RFC with regard to reaching; Plaintiff did not adequately allege that she was so restricted and there is "no information in the case record that there is such a limitation or restriction."  *See* Social Security Ruling 96-8p, 1996 WL 374184, at *1.

Turning to Plaintiff's claim involving  grip strength, there is medical evidence in the record from both consultative examiners that Plaintiff had *at least* a mild reduction in grip strength [Tr. 282 and 321 - 322], evidence which was acknowledged by the ALJ [Tr. 17].  Nonetheless, there is no corresponding limitation in Plaintiff's RFC assessment,[5] *id.,* nor was there in the ALJ's hypothetical questioning to the vocational expert [Tr. 355].

_____

[5]The record does not reveal whether the ALJ considered Plaintiff's reduced grip strength when determining that Plaintiff could perform the lifting requirements of light work.  The record does reflect, however, that the RFC assessment by the State agency physician – upon which the ALJ relied in support of her RFC for light work – predated the examination by Dr. Swink who found "significantly low" grip strength [Tr. 321].

The ALJ likewise failed to disclose her reasoning behind excluding such a limitation. According to the Tenth Circuit Court of Appeals, there is "the possibility that reduced grip strength may affect lifting,[6] carrying, pulling, manipulative, or handling functions." *See Ledford v. Barnhart,* 197 Fed. Appx. 808, at *811 (10th Cir. Oct. 19, 2006) (unpublished op.).[7]  Consequently, remand of this case is required in order that the ALJ can consider  in a reviewable manner the evidence pertaining to Plaintiff's reduced grip strength.

## <u>RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT</u>

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.  The parties are advised of their right to object to this Report and Recommendation by June 5, 2007,  in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[6]It is undisputed that Plaintiff has alleged from the outset of these proceedings that she was limited in her ability to lift [Tr. 62].

[7]The court specifically noted that a reduced grip strength could impact a claimant's ability to adjust to work as a bench assembly worker, the same position found suitable for Plaintiff in this matter. *Id.* at n. 3.  The vocational expert in this case, however, was not asked to consider the suitability of such position for a hypothetical claimant with reduced grip strength.

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 15th day of May, 2007.


BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE